**FILED**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND VIRGINIA

2008 OCT -2 P 4: 18

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | |
|---|---|
| DOZIER INTERNET LAW, P.C., a Virginia corporation, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RONALD J. RILEY, an individual, | ) |
| | ) |
| RONALD J. RILEY, an individual t/a RONALD J. RILEY | ) |
| CONSULTING, an unincorporated fictitious entity, | ) |
| | ) |
| RONALD J. RILEY, an individual t/a R & R | ) |
| ENTERPRISES, INC., an unincorporated fictitious entity, | ) |
| | ) |
| RONALD J. RILEY, an individual t/a R & R | ) Case No. 08- CV 643 |
| ENTERPRIZES, INC., an unincorporated fictitious entity, | ) |
| | ) |
| RONALD J. RILEY, an individual t/a RILEY CON- | ) |
| SULTANTS, INC., an unincorporated fictitious entity, | ) |
| | ) |
| RONALD J. RILEY, an individual t/a RILEY & | ) |
| ASSOCIATES, INC., a dissolved Michigan corporation, | ) |
| | ) |
| INVENTORED, INC., a Michigan corporation, | ) |
| | ) |
| INVENTORED, INC., a Michigan corporation | ) |
| t/a CENTER FOR PATENT POLICY, | ) |
| | ) |
| RILEY CONSULTING CORPORATION, | ) |
| a Michigan corporation, | ) |
| | ) |
| RILEY ENTERPRISES, LTD., a Michigan corporation, | ) |
| | ) |
| THE ALLIANCE FOR AMERICAN INNOVATION, | ) |
| LLC, a Michigan corporation, and | ) |
| | ) |

−1−

Dockets.Justia.com

THE ALLIANCE FOR AMERICAN INNOVATION,    )
LLC, a Michigan corporation t/a PROFESSIONAL    )
INVENTORS ALLIANCE,    )
               )
           Defendants.    )

## NOTICE OF REMOVAL

All defendants join in removing this case from the Circuit Court for the County of Henrico, Virginia (without waiving any defenses based on lack of service and lack of personal jurisdiction), for the following reasons.

1. Dozier Internet Law, P.C., the plaintiff in this case, is a Virginia corporation with its principal place of business in Virginia.

2. Ronald Riley lives in Grand Blanc, Michigan, and is a Michigan citizen.

3. All the corporate defendants are Michigan corporations whose principal place of business is in Michigan, and hence are Michigan citizens.

4. The citizenship of the plaintiff in this case is diverse from the citizenship of all the defendants. The amount in controversy exceeds $75,000, because although the amounts specifically pleaded in the Complaint total $55,000, the attorney fees that plaintiff will incur in litigating the claims stated will exceed the $10,000 pleaded, and in any event the value of the injunction for which the complaint prays raises the amount in controversy over $75,000.

5. Accordingly, this Court has original jurisdiction of the Complaint under 28 U.S.C. § 1332.

6. The complaint alleges claims for "statutory trademark infringement" and "common law trademark infringement," but does not specify the law under which the trademark claims arise. The Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), is a federal statute that makes trademark infringement actionable.

7. Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1338, and 15 U.S.C. § 1121.

8. The attached complaint reflects that it was filed on September 4, 2008. It has not been served on any of the defendants, and so far as defendants are aware, there have been no attempts at service. However, in an effort to have defendant Riley's supposedly infringing web site, www.cybertriallawyer-sucks.com, removed from the Internet, on September 10, 2008, plaintiff sent a copy of the complaint to the pSek, LLC, the Internet Service Provider that hosts the "sucks" web site online, and pSek forwarded the complaint to Riley. Accordingly, removal is timely.

> Paul Alan Levy
> plevy@citizen.org
> (pro hac vice admission to be sought)
> Gregory Beck
> gbeck@citizen.org
>
> Public Citizen Litigation Group
> 1600 - 20th Street, N.W.
> Washington, D.C. 20009
> (202) 588-1000
>
> Thomas Wolf
> (Virginia Bar No. 18234)
>
> LeClair Ryan
> Riverfront Plaza, East Tower
> 951 East Byrd Street, Eighth Floor
> Richmond, Virginia 23219
> 804-783-2003
> Thomas.Wolf@leclairryan.com
>
> Attorneys for Defendants

October 2, 2008

−3−

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of October, 2008, a copy of the foregoing was served by first class

U.S. Mail, postage prepaid, on:

John W. Dozier, Jr., Esq. (VSB No. 20559)
Dozier Internet Law, P.C.
11520 Nuckols Road, Suite 101
Glen Allen, Virginia 23059

Thomas Wolf (VSB No. 18234)
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
804-783-2003
Thomas.Wolf@leclairryan.com

Paul Alan Levy
plevy@citizen.org
(pro hac vice admission to be sought)
Gregory Beck
gbeck@citizen.org
Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

Attorneys for Defendants

October 2, 2008

−4−

DOZIER INTERNET LAW, P.C., a Virginia corporation, )
                  Plaintiff, )
                            )
                            )
            v. )
                            )

RONALD J. RILEY, an individual, )
                            )

RONALD J. RILEY, an individual t/a RONALD J. RILEY )
CONSULTING, an unincorporated fictitious entity, )
                            )

RONALD J. RILEY, an individual t/a R & R )
ENTERPRISES, INC., an unincorporated fictitious entity, )
                            )

RONALD J. RILEY, an individual t/a R & R )       Case No. CL08-2123
ENTERPRIZES, INC., an unincorporated fictitious entity, )
                            )

RONALD J. RILEY, an individual t/a RILEY CON- )
SULTANTS, INC., an unincorporated fictitious entity, )
                            )

RONALD J. RILEY, an individual t/a RILEY & )
ASSOCIATES, INC., a dissolved Michigan corporation, )
                            )

INVENTORED, INC., a Michigan corporation, )
                            )

INVENTORED, INC., a Michigan corporation )
t/a CENTER FOR PATENT POLICY, )
                            )

RILEY CONSULTING CORPORATION, )
a Michigan corporation, )
                            )

RILEY ENTERPRISES, LTD., a Michigan corporation, )
                            )

THE ALLIANCE FOR AMERICAN INNOVATION, )
LLC, a Michigan corporation, and )
                            )

THE ALLIANCE FOR AMERICAN INNOVATION, )
LLC, a Michigan corporation t/a PROFESSIONAL )
INVENTORS ALLIANCE, )
                 Defendants. )

## NOTICE OF FILING OF REMOVAL IN FEDERAL COURT

Please take notice that on October 2, 2008, the defendants in this case filed the attached

Notice of Removal in the United States District Court for the Eastern District of Virginia, Richmond

Division. Pursuant to 28 U.S.C. Section 1446(d), no further action may be taken in this Court unless

this case is remanded by the federal court.

_____

Thomas Wolf (VSB No. 18234)
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
804-783-2003
Thomas.Wolf@leclairryan.com

Paul Alan Levy
plevy@citizen.org
(pro hac vice admission to be sought)
Gregory Beck
gbeck@citizen.org
Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

Attorneys for Defendants

October 2, 2008

# CERTIFICATE OF SERVICE

I certify that on the 2nd day of October, 2008, a copy of the foregoing was served by first class

U.S. Mail, postage prepaid, on:

> John W. Dozier, Jr., Esq. (VSB No. 20559)
> Dozier Internet Law, P.C.
> 11520 Nuckols Road, Suite 101
> Glen Allen, Virginia 23059

> Thomas Wolf (VSB No. 18234)
> LeClair Ryan
> Riverfront Plaza, East Tower
> 951 East Byrd Street, Eighth Floor
> Richmond, Virginia 23219
> 804-783-2003
> Thomas.Wolf@leclairryan.com

> Paul Alan Levy
> plevy@citizen.org
> (pro hac vice admission to be sought)
> Gregory Beck
> gbeck@citizen.org
> Public Citizen Litigation Group
> 1600 - 20th Street, N.W.
> Washington, D.C. 20009
> (202) 588-1000

> Attorneys for Defendants

October 2, 2008

VIRGINIA:



RECEIVED

SEP 4 2008

CLERK'S OFFICE
HENRICO CIRCUIT COURT

## IN THE CIRCUIT COURT
## FOR THE COUNTY OF HENRICO, VIRGINIA

DOZIER INTERNET LAW, P.C.,          )
a Virginia corporation.             )
                                    )
     Plaintiff.               )
                                    )          Trademark Infringement
    vs.                         )
                                    )
RONALD J. RILEY,                    )
an individual,                      )
                                    )
RONALD J. RILEY, an individual t/a  )
RONALD J. RILEY CONSULTING, an      )
unincorporated fictitious entity,   )
                                    )
RONALD J. RILEY, an individual t/a  )
R & R ENTERPRISES, INC., an         )
unincorporated fictitious entity.   )
                                    )
RONALD J. RILEY, an individual t/a  )
R & R ENTERPRIZES, INC., an         )
unincorporated fictitious entity,   )
                                    )
RONALD J. RILEY, an individual t/a  )
RILEY CONSULTANTS, INC., an         )
unincorporated fictitious entity,   )
                                    )
RONALD J. RILEY, an individual t/a  )
RILEY & ASSOCIATES, INC., a         )
dissolved Michigan corporation.     )
                                    )
INVENTORED, INC.,                   )
a Michigan corporation,             )
                                    )
INVENTORED, INC., a Michigan        )
corporation t/a CENTER FOR PATENT   )
POLICY.                             )
                                    )

**COMPLAINT**

RILEY CONSULTING CORPORATION, )
a Michigan corporation, )
)
RILEY ENTERPRISES, LTD., a Michigan )
corporation, )
)
THE ALLIANCE FOR AMERICAN )
INNOVATION, LLC, )
a Michigan corporation, and )
)
THE ALLIANCE FOR AMERICAN )
INNOVATION, LLC, a Michigan )
corporation t/a PROFESSIONAL )
INVENTORS ALLIANCE, )
)
Defendants. )
)

## COMPLAINT

This day came the Plaintiff, on its own behalf and by counsel, and for and in support of

its Complaint states as follows:

1.  Dozier Internet Law, P.C., is a Virginia corporation and a law firm located in Glen Allen,
    Virginia.

2.  Defendant Ronald J. Riley (hereinafter referred to as "Riley") is an individual located in
    the State of Michigan.

3.  Defendant Ronald J. Riley is an individual t/a Ronald J. Riley Consulting, an
    unincorporated fictitious entity located in the State of Michigan.

4.  Defendant Ronald J. Riley is an individual t/a R & R Enterprises, Inc., an unincorporated
    fictitious entity located in the State of Michigan.

5.  Defendant Ronald J. Riley is an individual t/a R & R Enterprizes, Inc., an unincorporated
    fictitious entity located in the State of Michigan.

6.      Defendant Ronald J. Riley is an individual t/a Riley Consultants, Inc.. an unincorporated fictitious entity located in the State of Michigan.

7.      Defendant Ronald J. Riley is an individual t/a Riley & Associates, Inc.. a dissolved Michigan corporation located in the State of Michigan.

8.      Defendant Inventored, Inc.. is a Michigan corporation located in the State of Michigan.

9.      Defendant Inventored, Inc.. is a Michigan corporation t/a Center for Patent Policy located in the State of Michigan.

10.      Defendant Riley Consulting Corporation is a Michigan corporation located in the State of Michigan.

11.      Defendant Riley Enterprises, Ltd.. is a Michigan corporation located in the State of Michigan.

12.      Defendant The Alliance for American Innovation, LLC. is a Michigan corporation located in the State of Michigan.

13.      Defendant The Alliance for American Innovation, LLC. is a Michigan corporation t/a Professional Inventors Alliance located in the State of Michigan.

14.      The Defendants purportedly operate out of Michigan and Washington, D.C. (hereinafter referred to collectively as "Riley Businesses").

15.      All of the Riley Businesses have acted jointly, in cooperation and with the specific intent to join together, aid and abet each other, and conspire together to orchestrate, carry out, and perpetrate the misconduct set forth, and are jointly and severally liable as conspirators and otherwise for all such misconduct.

16.      All of the Riley Businesses are undercapitalized, their corporate formalities have been ignored, they have been treated by Riley as his personal and individual enterprises, and

Riley and Riley Businesses have acted in such a way as to allow the Plaintiff to pierce the corporate veil of each entity.

## BACKGROUND INFORMATION

17.    Ronald J. Riley's False Identity:

In 1990, Riley found himself unemployed. A community college dropout, he was soon living in a mobile home. And then he came up with an ingenious plan. Riley enjoyed tinkering, and so he decided to falsely portray himself as a renowned and successful inventor, even though he was neither. The Internet gave him an idea. If he could create a false identity, he could convince those not familiar with his background that he was an expert in entrepreneurial ventures and inventions. Then he could make money as a consultant and offer feigned "expertise" to assist inventors and entrepreneurs in commercializing their ideas and creations. Years later, Riley describes the settlements and licensing deals he has obtained for entrepreneurs and inventors as a "win-win situation for me."

But first, Riley needed to be an expert. So, he created businesses to build an identity. Since 1990 he has served as President or owner of a panoply of ever-changing "businesses": Ronald J. Riley Consulting, R & R Enterprises, Inc., R & R Enterprizes, Inc., Riley Consultants, Inc., Riley & Associates, Inc., Center for Patent Policy, Riley Consulting Corporation, Riley Enterprises, Ltd., and Professional Inventors Alliance. Riley formed a tax-exempt corporation, "Inventored, Inc.", in 1995, and accorded himself the position of "Executive Director". In 2005, three years after the disbandment of the high profile lobbying group, "The Alliance for American Innovation", Riley incorporated, as the sole owner, a business by the same exact name, voted himself in as its President, and went about assuming the name and online reputation of the well

respected special interest group. Claiming a Washington, D.C. address in many of his online posts, he has stolen the identity of the disbanded organization and laid claim to their many publicly available achievements. An inventor and entrepreneur in Silicon Valley, Paul Heckel, the founder of a special interest group known as "Intellectual Property Creators", has recently passed away. Riley is now claiming he has been entrusted by Mr. Heckel to head up Mr. Heckel's organization, when in fact that organization was on the verge of disbanding and inactive at the time of Mr. Heckle's death. Riley is again attempting to hijack the prominent and high profile reputation of this organization in order to create another false credential and affiliation. Recently Riley has been claiming that he is a "Senior Fellow" of "The Center for Patent Policy". While there is no identification on the organization's website as to ownership, the domain name is not held in Riley's name, and the web server hosting the site is different than Mr. Riley's many other websites, a detailed search of the State of Michigan corporate records shows that the "Center for Public Policy" is a fictitious name used by a Riley owned corporation. Riley has actually named himself a "Senior Fellow".

Not content with having created executive positions and misappropriating the identity of businesses, he is also focusing on building a reputation of academic achievement, despite having failed to complete the first year of studies at a local Michigan community college. In 1998, Riley convinced a small organization to name him "inventor of the week" by the submission of false information. The organization was using the Massachusetts Institute of Technology website to host its site, but is in no way a part of MIT. Mr. Riley then purchased listings in fourteen "Who's Who" books and now claims that he is the "recipient (sic) Massachusetts Institute of Technology Invention Dimension Inventor of Week Award". MIT is simply not aware of the "MIT" award

given to Mr. Riley. Unfortunately for the novice inventor, Riley provides a link on his homepage that leads through a directory on this site, and he is listed on the same page as highly successful, prominent inventors (Reese for Reese's Peanut Butter Cup, Reynolds for Reynolds Wrap, Rubik for Rubik's Cube), although he has never successfully commercialized one of his "inventions".

In June of 2006, Riley began claiming online that he had spoken on a panel at Harvard Law School. Harvard Law School reports no record of Mr. Riley doing so. Most recently, Riley has claimed to be an influential lobbyist in Congress, yet he is not a registered lobbyist and has filed no disclosure or contribution reports which would have been required by law. Riley is also claiming to be a "credentialed investigative journalist", yet after an exhaustive search there is no record found of his employment or engagement by any credible news or journalism related organization in the world.

The success of Riley's fraud is evidenced by his targeting the 2002 Nobel Prize winner in Chemistry (a research professor at Virginia Commonwealth University and a resident of Richmond, Virginia). Riley undertook a campaign to fraudulently gain his confidence and convince him to join the Senior Advisory Board of the Center for Patent Policy, which is clandestinely owned by one of Riley's corporations. Riley now uses this professor's association with his organization to further bolster his fraudulent credentials.

Through this fraud, Ronald J. Riley has gone from an unemployed community college dropout living in a mobile home to an assumed identity of a credentialed investigative journalist, an associate of a Nobel Prize winner, the titular leader of seemingly prestigious inventor industry think tanks and powerful special interest groups, a Washington, D.C. powerbroker and friend of U.S. Senators and Congressmen, an award winning inventor revered by MIT, and a sought after speaker by the Harvard Law School.

Riley has perpetrated one of the most successful business credential frauds ever committed upon the inventor and entrepreneur community.

18. Ronald J. Riley's Fraudulent Business Plan:

The tax exempt organizations create an appearance of legitimacy, particularly coupled with the hijacking of the lobbying group's name. Riley is constantly soliciting funds, yet reports on a charitable fundraising site that his operating costs average approximately $85.00 per month. Plaintiff believes that these businesses are false fronts raising tax-free contributions that are then funneled into Riley's personal possession and used to pay personal living expenses and operating expenses of his private business enterprises. In addition, Riley's consulting business and other financial enterprises are the sole beneficiary of the "tax-exempt" enterprises, and all of the businesses and corporations formed by Riley are for his sole and exclusive personal benefit. Indeed, his "tax exempt" website carries extensive advertising for Mr. Riley's private, non-exempt business enterprises and operates as commercial, for profit companies.

19. Ronald J. Riley's Online Marketing Abuse:

Riley, without the funds to advertise, undertook several years ago a unique, clandestine "advertising" campaign to gain national attention and recognition, but to also drive potential customers and charitable contributors to his websites. A third, less obvious goal, was to attack and disparage his competitors with a false appearance of objectivity. While feigning to be an inventor industry whistle blower, Riley undertakes campaigns to have his many websites show up when competitors are sought out online. These campaigns are executed under a three tactic approach: attacking competitors through the publication of defamatory and outrageous accusations on blogs, forums and social networking sites; launching "sucks" sites against competitors programmed so his

websites appear when the company is searched, and often containing trademark infringing uses of the competitor's name; and launching "sucks" websites attacking non-inventor or entrepreneur industry businesses for the purpose of generating attention, which leads to a higher ranking on the search engines, more traffic to Riley's sites, and more "marks" for him to solicit. Remarkably, Riley let slip his motivation, already obvious to experienced bloggers:

> "So I am not here to convince Mike about anything. The reason I drop in is to take advantage of the fact that his outrageous comments draw potential inventor supporters. So by spending a small amount of time on the sites which are stooging for the Piracy Coalition I attract new solders to our side."

Riley travels around the web, finds websites that are high ranking for his prospective clientele, and then posts outrageous attacks and fraudulent misrepresentations motivated solely by his commercial self interests. Riley is particularly fond of attacking law firms with whom he competes for the business of representing entrepreneurs and inventors in intellectual property negotiations. But Riley also casts a wide net and has launched "sucks" sites against American Express, Ameriprise, Northwest Airlines, Unilever, and his daughter's public school teacher. A very small sampling of some of his comments follow:

A.   "I was implying that the Amex family was inbreeding."

B.   "Is it true that American Express has a breeding program where they are crossbreeding their most obnoxious and ignorant staff to produce a superior race of Amex shills?"

C.     "I believe that this is their form of foreplay, and that they are getting ready to mate. I surmise that they are planning to produce genetically tailored offspring for American Express."

20.    Ronald J. Riley's Attack on Anonymous Bloggers and the 1st Amendment:

Riley's egregious misconduct is not just focused on competitors, but on detractors, and on those questioning his authority and legitimacy. For years, Riley has threatened those challenging him with a broad array of attacks on their individual free speech rights. Riley, in almost every instance, claims those who disagree with him are "paid shills" for the opposing viewpoint, and has threatened to gain access to the log files of online forums so he can obtain the IP addresses of posters and have his "research department" break through the anonymity and identify the posters. The mere threat has prevented the earlier outing and disclosure of this fraud since Mr. Riley is a master of online attack tactics and has scared and intimidated many individuals through his prolific online participation at a broad range of intellectual property, legal, inventor, entrepreneur and inventor websites. Some of Riley's more clearly articulated threats attacking the anonymity of online speakers follow:

A.     "I could bring a lawsuit and force each of the service providers to give up their server logs."

B.     "You should feel ashamed for posting as "Anonymous" or otherwise sending stooges and shills to forums…"

C.     "Perhaps InventBlog could post the IP addresses used to send each of the above messages? They might shed considerable light on the source of the messages."

D. "Might I suggest Tracy that you pull the IP addresses of everyone shilling for MLM's on this discussion and post those addresses. I will then have our our (sic) research group see if they can track down who the posters are."

E. "What I am interested in is seeing if our researchers can tie some of those posters to a specific MLM company and then exposing (sic) who they are stooging for."

F. "The information we need to trace them will be contained in the server logs."

G. "Now for your own good you need to stay away from inventor forums. Any other approach will only make your life more difficult."

H. "Any threats, to sue or otherwise, will be promptly passed to the media. This will get the questionable party much more publicity than do these pages."

These types of threats from Riley have been met with some resistance but to no avail:

I. "What's with this guy? Hasn't he ever heard of the first amendment? or (sic) should we all censor our opinions because Ronald J. Riley is going to hunt us down?"

J. "The ability to publish anonymously is a proud American tradition. The Federalist Papers were authored anonymously, and carried great weight. Additionally, you have previously shown a tendency to make false accusations against those who question your credentials, so posting anonymously to prevent it is perfectly logical." (Moderator at Techdirt.com)

K. "Once again, your natural tendency is to attack and belittle those who try to tell the truth about you."

21. Background Summary:

In summary, Riley concocts credentials in a highly sophisticated way, hijacks and steals the identity and goodwill of organizations, uses inventor and entrepreneur forums,

blogs and other online social networking sites for the commercial purpose of locating prospective clients or customers and driving traffic to his sites, and fends off his detractors, and those attempting to spread the truth about Riley to novice inventors and entrepreneurs, by attacking relentlessly the right to speak anonymously, and the right to speak in general. Riley attacks by asserting a broad range of outrageous and false misconduct impugning the reputation of the speakers when identifiable, threatening to track down anonymous posters through lawsuits, and threatening to obtain log files and IP addresses of those exercising their free speech rights to anonymity.

## COUNT I

### Statutory Trademark Infringement

22. Plaintiff incorporates by reference, as if fully enumerated in this Count, each and every allegation of Paragraphs 1 through 21 above and all subsequent allegations in this Complaint.

23. Dozier Internet Law, P.C. is a registered trademark at the Commonwealth of Virginia, State Corporation Commission's, Division of Securities and Retail Franchising, and a copy of the registration is attached hereto as "Exhibit A".

24. Dozier Internet Law, P.C. has acquired exclusive rights to the use of the name and has not licensed the use to the Defendants or any other third parties.

25. The Riley Businesses have launched a page on the web that contains twelve (12) different instances in which the trademark "Dozier Internet Law" is exclusively used as anchor text in a hypertext link. An anchor link is supposed to describe the destination a visitor will reach when clicking on the link, and functions much like a road map with a shortcut. These anchor links, however, do not take a visitor to the Dozier Internet Law

website. Rather, the links send the party clicking on them to the main website used by the Riley Businesses that offer services which directly compete with Dozier Internet Law.

26.     The Riley Businesses offer inventors, entrepreneurs, and business start-ups consulting services, including, without limitation, negotiation of license royalties and other intellectual property guidance and advice. The same parties Dozier Internet Law represents in the early stages of an Internet business are the target market of prospective clients for the Riley Businesses.

27.     Defendants' conduct with respect to the anchored text links has caused actual confusion, including initial interest confusion, and has been likely to cause consumer confusion, mistake and deception as to the source or origin of the goods or services of Dozier Internet Law since the link to Dozier Internet Law leads to the Defendants' website, at which solicitation of prospective Dozier Internet Law clients is undertaken. For example, consumers clicking on these links for the Dozier Internet Law website reasonably expected to be taken to the Dozier Internet Law website. Defendants' diversion of traffic is similar to a department store using the name of a major competitor on its outdoor signage. Once a consumer has been lured to enter the wrong store, the consumer has been confused, and any consumer seeing the sign is likely to be confused by this false and misleading advertising and trademark infringement.

28.     This particular web page, due to the trademark infringing misconduct, now is presented as a prominent result whenever a prospective client searches for Dozier Internet Law on a major search engine. Riley has used the Dozier Internet Law name in order for his websites to be displayed to prospective Dozier Internet Law clients solely for commercial purposes.

29. This is but one example of the many abuses, and the scheme and strategy, undertaken by Riley Businesses in using the trademarks of competitors to hijack prospective business clients.

30. Such conduct is intentional, reckless, malicious, knowing, purposeful, and part of the ongoing scheme by all of the Riley Businesses to defraud consumers and misappropriate the intellectual property and trademark of competitors.

## COUNT II

### Common Law Trademark Infringement

31. Plaintiff incorporates by reference, as if fully enumerated in this Count, each and every allegation of Paragraphs 1 through 30 above and all subsequent allegations in this Complaint.

32. Defendants have infringed on the common law trademark of the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff moves this honorable Court for entry of relief as follows:

1. Compensatory damages in the sum of $35,000.00;

2. Punitive damages in the sum of $10,000.00;

3. Attorneys' fees in the sum of $10,000.00;

4. Its court costs; and

5. A permanent injunction prohibiting Defendants from the trademark infringing misconduct as set forth herein.


DATED this 4th day of September, 2008.

DOZIER INTERNET LAW, P.C.
a Virginia corporation

By _____
John W. Dozier, Jr., Esq.
Counsel for Plaintiff

John W. Dozier, Jr., Esq.
Virginia Bar # 20559
Dozier Internet Law, P.C.
11520 Nuckols Road, Suite 101
Glen Allen, VA 23059
Telephone: (804) 346-9770
Facsimile: (804) 346-0800
Email: jwd@cybertriallawyer.com

# COMMONWEALTH OF VIRGINIA

## STATE CORPORATION COMMISSION

### Certificate of Registration of a Trademark or Service Mark

At Richmond, March 1, 2007

On this date this certificate of registration of the mark reproduced below was issued to

Dozier Internet Law, P.C.
301 Concourse Blvd.
West Shore III, Suite 300
Glen Allen, VA 23059

A Virginia Corporation.

### Dozier Internet Law, P.C.

No claim is made for exclusive use of the words
"Internet, Law and P.C." disclaimed apart from the mark as shown.

The date claimed for the first use of the mark anywhere is: June 1, 2004.

The date claimed for the first use of the mark in Virginia is: June 1, 2004.

Class of goods or services: 42

Description of goods or services: Legal services concerning the law of the Internet.

This registration will expire on March 1, 2012, and is effective only with respect to the goods or services described herein.

STATE CORPORATION COMMISSION

By: _____

Registrar of Trademarks
and Service Marks

File No. 8314