UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND VIRGINIA

DOZIER INTERNET LAW, P.C.,           )
                                     )
                 Plaintiff,          )
                                     )
     v.                              )    No. 3:08-cv-00643-HEH
                                     )
RONALD J. RILEY, *et al.*,           )
                                     )
                 Defendants.         )

**MEMORANDUM OF DEFENDANTS RONALD J. RILEY *ET AL.*
IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction and Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.   THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THIS CASE
     ARISES UNDER FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  THE COMPLAINT WAS PROPERLY REMOVED UNDER DIVERSITY
     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**CASES**

*America's MoneyLine v. Coleman*,
    360 F.3d 782 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Beneficial National Bank v. Anderson*,
    539 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cradle v. Monumental Life Insurance Co.*,
    354 F. Supp.2d 632 (E.D. Va. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dixon v. Edwards*,
    290 F.3d 699 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ford-Fisher v. Stone*,
    2007 WL 190153 (E.D. Va. Jan 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gavin v. AT&T Corp.*,
    464 F.3d 634 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Grant v. Chevron Phillips Chemical Co.*,
    309 F.3d 864 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hunt v. Washington State Apple Adver. Commission*,
    432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lovell v. State Farm Mutual Automobile Insurance Co.*,
    466 F.3d 893 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Marshak v. Treadwell*,
    240 F.3d 184 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Association for Healthcare Communications v. Central Arkansas
Area Agency on Aging*,
    257 F.3d 732 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Perfect 10 v. CC Bill*,
　　488 F.3d 1102 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Planetary Motion v. Techsplosion*,
　　261 F.3d 1188 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schlessinger v. Salimes*,
　　100 F.3d 519 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schwenk v. Cobra Manufacturing Co.*,
　　322 F. Supp. 2d 676 (E.D. Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. GTE Corp.*,
　　236 F.3d 1292 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Wal-Mart Stores*,
　　537 F. Supp. 2d 1302 (N.D. Ga. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
　　303 U.S. 283 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sugar Busters LLC v. Brennan*,
　　177 F.3d 258 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Two Pesos v. Taco Cabana*,
　　505 U.S. 763 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ty Inc. v. Softbelly's Inc.*,
　　353 F.3d 528 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. Search, LLC v. U.S. Search.com*,
　　300 F.3d 517 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wyatt v. Sussex Surry*,
　　482 F. Supp. 2d 740 (E.D. Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Zeran v. America Online*,
　　129 F.3d 327 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES AND RULES**

Communications Decency Act
      47 U.S.C. § 230 ................................................................. 11

      47 U.S.C. § 230(e)(2) ............................................................ 6

Lanham Act,
      15 U.S.C. §§ 1051 *et seq.* ............................................... 9, 10, 13

          Section 32, 15 U.S.C. § 1114 ................................................. 10
          Section 35, 15 U.S.C. § 1117(d) .............................................. 12
          Section 39, 15 U.S.C. § 1121 .................................................. 9
          Section 43(a), 15 U.S.C. § 1125(a) ...................................... 1, 10, 11

28 U.S.C. § 1331 ............................................................................ 9

28 U.S.C. § 1332 ........................................................................... 12

28 U.S.C. § 1337 ............................................................................ 9

28 U.S.C. § 1338 ........................................................................... 10

28 U.S.C. § 1367 ........................................................................... 11

Virginia Code § 59.1– 92.13 ............................................................... 13

Federal Rules of Civil Procedure

      Rule 11 ..................................................................... 11

**MISCELLANEOUS**

*The $75,000.01 Question: What Is the Value of Injunctive Relief,*
      6 Geo. Mason L. Rev. 1013 (1999) ........................................... 13

This action was brought in state court by a Richmond-area law firm against an Internet critic living in Michigan, seeking to suppress criticism in the name of trademark law, and was removed to this Court. Plaintiff seeks remand, even though the complaint alleges "statutory" and "common law" trademark infringement, causes of action that arise under the federal Lanham Act, 15 U.S.C. § 1125(a). Moreover, even to the extent that the complaint alleges state law claims, it prays for damages and attorney fees in the amount of $55,000, understating the amount of attorney fees likely to be incurred in a trademark suit such as this, as well as an injunction to prevent future damage to plaintiff that alone brings the amount in controversy over $75,000. Indeed, the fact that it is a self-professed Virginia SuperLawyer, designated as such by the local Bar, who is bringing this case against a critic from another state, places this case squarely within the category of cases that Congress meant to make removable to protect citizens of other states from local prejudice. Accordingly, plaintiff's motion for remand should be denied.

**STATEMENT**

It would be quite an understatement to say that John Dozier and Ronald Riley dislike and disapprove of each other.

John Dozier is a Virginia lawyer whose various web sites praise him as a Virginia "Super Lawyer" and "Elite Lawyer," plaudits allegedly obtained by nomination by the Virginia Bar and other local lawyers who know him. *See* http://cybertriallawyer.com/. Dozier is the founder and sole owner of plaintiff law firm Dozier Internet Law, which specializes in representing small and medium sized businesses in connection with legal issues arising online, as well as more generally with intellectual property issues in the area of copyright and trademark law. *Id.* Dozier maintains a web site for his law firm at cybertriallawyer.com, along with more than sixty other

web sites where he promotes his own and his law firm's work, both directly, by discussing its work, and by including hyperlinks to his firm web site.[1] This technique is calculated to raise the ranking of his various web sites in the search results obtained on search engines such as Google and Yahoo!. Dozier has attracted a fair amount of notoriety on the Internet for some of the outlandish assertions that he and his associates have made, such as that their cease and desist letters cannot be published for the purpose of public criticism without infringing their copyright, http://overlawyered.com/2007/10/nastygram-don't-you-dare-post-this-nastygram-on-the-web/, that the firm can forbid internet viewers from looking at the source code for its web site,

---

[1] http://dozierinternet-law.blogspot.com, http://dozier-internetlaw.blogspot.com, http://dozier-internet-law.blogspot.com/, http://dozierinternetlawpc.blogspot.com/, http://dozier-internetlawpc.blogspot.com/, http://www.cybertriallawyer.com/, http://dozierinternetlaw.cybertriallawyer.com/, http://dozierinternetlaw.cybertriallawyer.com, http://www.dozierinternetlaw.com/, http://www.dozierinternet-law.org/, http://www.dozier-internetlaw.org/, http://dozierinternetlaw.net/, <http://www.dozier-internetlaw.com/, http://www.dozier-internet-law-pc.com/, http://internet-law-dozier.biz/, http://dozierinternetlaw.cybertriallawyer.com/, http://www.internet-law-dozier.com/, http://dozier-internetlaw.blogspot.com/, http://johndozierjr.typepad.com/, http://www.dozierinternetlaw.org/, http://dozierinternetlawpc.cybertriallawyer.com/, http://dozier-internet-law.cybertriallawyer.com/, http://dozierinternetlaw.net/, http://www.dozier-internet-law.info/, http://dozierinternetlawsuits.blogspirit.com/, http://dozierinternetlawpc.blogspot.com/, http://defamationlawyers.net/, http://www.dozierinternet-law.com/, http://wordpress.com/tag/dozier-internet-law/, http://internet-lawyers.org, http://copyrightlawyer.biz/, http://trademarkinfringementattorneys.com/, <http://defamation-attorneys.com/, http://www.technology-lawyer.net/, http://slander-attorneys.com/, <http://spamlawyer.org/, http://www.libel-attorney.net/, http://www.dozierweblaw.com/, http://slander-attorney.com/, http://copyright-law-firm.net/, http://www.trademarklawlawyers.com/, http://trademarkinfringementattorney.com/, http://viginialawyers.com/, http://dozierinternetlawpc.cybertriallawyer.com/, http://www.slander-lawyers.com/, http://defamation-of-character.com/, http://www.net-attorney.net/, http://www.slander-lawyer.com/, <http://web-lawyer.net/, http://entertainment-lawyers.net/, http://defamation-attorney.com/, http://internet-law-lawyer.com/, http://internet-law-lawyer.net/, http://www.defamation-lawyer.com/, http://libel-lawyer.com/, http://internet-law-firm.net/, http://internet-attorneys.net/, http://www.intellectualproperty-lawyer.com/, http://www.copyright-attorney.biz/, and http://internet-law-dozier.biz/, http://www.aboutus.org/IpLaywer.com

http://overlawyered.com/2007/10/dont-link-criticize-use-our-name-refer-to-us-view-our-source-code/ and that the firm can forbid others from linking to the firm's web site without its express permission. *Id.* Paradoxically, these critical web sites and their links to Dozier web sites have the effect of increasing the Internet visibility of Dozier's own web sites. Consequently, the majority of the first one hundred results for the search terms "Dozier Internet" or "Dozier Internet Law" on both Google and Yahoo! – the two search engines that attract the most traffic – lead to one of Dozier's own web sites. Exhibit A.

On October 12, 2007, Dozier associate Donald Morris sent cease and desist letters on behalf of Inventor Link, a company that purports to help inventors, alleging that statements about Inventor Link on several different web sites were defamatory. Morris threatened to bring suit for defamation and other causes of action against both the posters and the operators of the web sites that allowed the comments to be posted. http://www.inventored.org/caution/inventor-link/Demand-Letter-1.html; http://www.inventored.org/caution/inventor-link/Demand-Letter-2.html.

Defendant Ronald Riley was one recipient of such a letter, Complaint in *Riley v. Dozier* (hereafter, "Federal Complaint") ¶ 5, in his capacity as the head of defendant InventorEd, a non-profit corporation that also holds itself out as aiding inventors. http://www.inventored.org/. Far from complying with the cease-and-desist demands, Riley reacted on October 15 by registering the domain name cybertriallawyer-sucks.com. He erected a new web site at the address where he set forth very caustic criticisms of Dozier personally, as well as Dozier's law firm and Mr. Morris individually. *Id.* ¶ 6. A copy of the web page is attached as Exhibit B. Throughout this web page, there are hyperlinks embedded in the term "Dozier Internet Law." Some of those hyperlinks lead back to the Dozier firm's main web page, cybertriallawyer.com. Others lead to a

page on the InventorEd web site, http://www.inventored. org/caution/inventor-link/#letters, that sets forth – and critiques – the Dozier firm's cease and desist letters to Riley and others in the inventor community.  *Id.* ¶ 8.  Riley's web page has achieved the third-ranking position on Google searches for the terms "Dozier Internet Law" or "Dozier Internet."  Exhibit A.

Instead of explaining why Riley's criticism was wrong, or allowing the exaggerated tone of the criticism to speak for itself, Dozier tried to suppress it.  First, he wrote to A Small Orange, the Internet Service Provider ("ISP") in Atlanta, Georgia that was hosting Riley's web page, claiming that the page defamed him and infringed the trademark in his law firm's name, Dozier Internet Law.  When A Small Orange ("ASO") refused to take action against Riley's site, Dozier wrote to Global Net Access, or "GNAX," the Internet firm that provided access to the Internet for ASO and all of its customers, making the same claims of defamation and trademark infringement, and offering his personal assistance to GNAX in return for GNAX's forcing the removal of Riley's page.  Federal Complaint ¶ 10.  Dozier specifically asked that GNAX ensure that, if Riley succeeded in moving his domain name to a new ISP, Riley not be able to "transfer the 'page rank juice'" of his page as hosted by ASO. As a result of Dozier's claims of trademark infringement, GNAX forced ASO to take down Riley's site (because GNAX threatened to take down the Internet connections for **all** of ASO's clients if it did not comply).  *Id.* ¶¶ 11-12.  Riley then moved his web site to a new hosting service, pSek, located in California.  *Id.* ¶ 13.

On September 4, 2008, Dozier filed this action in the Circuit Court for Henrico County, Virginia.  Dozier's complaint (referred to as "State Complaint") was brought against Riley personally as well as against several existing and defunct trade names and corporations that Dozier alleges are controlled by Riley.  State Complaint ¶¶ 2-16, pp. 1-3.  The complaint begins

by setting forth a litany of accusations against Riley, charging him with being a college dropout who lived in a mobile home, with creating a false identity and building on that false identity to make money for himself, undertaking various fraudulent business plans, and engaging in improper efforts to intimidate his critics. *Id.* ¶¶ 17-21, pp. 4-11. Those allegations bear no apparent relationship to the causes of action actually pleaded in the complaint – trademark infringement – but rather appear to be an effort by Dozier to criticize Riley only in legal papers that can be argued to be absolutely privileged against suit for defamation.

The complaint then sets out two counts of trademark infringement. *Id.* ¶¶ 23-32, pages 11-13. It alleges that the term "Dozier Internet Law, P.C." is a registered trademark with the Commonwealth of Virginia, ¶ 23, and that Riley's businesses compete directly with it for clients, ¶¶ 25-27, 29. The complaint further alleges that Riley's cybertriallawyer-sucks web page has embedded hyperlinks into the trademarked term "Dozier Internet Law," which do not link to Dozier's own web site but rather to "the main web site used by the Riley Businesses that offer services which directly compete with Dozier Internet Law," ¶ 25, or to "Defendants' web site, at which solicitation of prospective Dozier Internet Law clients is undertaken," ¶ 27. Without ever specifying whether this conduct violates federal or state trademark law, the complaint alleges that the links on cybertriallawyer-sucks.com "ha[ve] caused actual confusion, including initial interest confusion, and ha[ve] been likely to cause consumer confusion, mistake and deception as to the source or origin of the goods or services of Dozier Internet Law," ¶ 27, and that Riley has engaged in "trademark infringing misconduct," ¶ 28. The complaint further alleges more generally that Riley has engaged in "many [other] abuses, and the scheme and strategy . . . in using the trademarks of competitors to hijack prospective business clients," ¶ 29, and that Riley

seeks to "defraud consumers and misappropriate the intellectual property and trademarks of competitors." ¶ 30. This conduct, according to the title of Count I, constitutes "Statutory Trademark Infringement"; the complaint does not specifically identify the statute. Count II, entitled "Common Law Trademark Infringement," incorporates all the previous allegations and alleges that "Defendants have infringed on the common law trademark of the Plaintiff." The complaint does not specify which common law applies.

The State Complaint asks the state court to award $35,000 in compensatory damages allegedly caused by the supposed trademark infringements on Riley's web site in the ten months since it had been created, as well as $10,000 in punitive damages and $10,000 in attorney fees. In addition, the complaint prays for an injunction against the "trademark infringing misconduct as set forth herein." *Id.* page 13.

The State Complaint has never been served on any of the defendants, even though it was filed more than two months ago. Federal Complaint ¶ 14. Nor, indeed, has there been any attempt at service.

Instead, Dozier attached the complaint to a letter to pSek dated September 10, 2008, threatening pSek, with liability for "contributory trademark infringement, aiding and abetting, and conspiracy," if it did not accede to his demand that it take down Riley's web site. Exhibit B to Dozier Motion to Dismiss, DN 7-3. By specifically threatening to hold pSek liable for trademark infringement, Dozier was taking advantage of the fact that, although a federal law, the Communications Decency Act, immunizes ISPs from liability for most of the content provided by others on web sites that they host, *e.g.*, *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Zeran v. America Online*, 129 F.3d 327 (4th Cir. 1997), that immunity does not extend to "intellectual

property" claims. 47 U.S.C. § 230(e)(2).[2] pSek responded by asking whether Dozier was threatening to hold it liable under state or federal trademark law, noting that the United States Court of Appeals for the Ninth Circuit has held that the intellectual property exception includes only **federal** intellectual property claims. *Perfect 10 v. CC Bill*, 488 F.3d 1102 (9th Cir. 2007). Dozier refused to respond directly to this question, simply reiterating his threat to sue for contributory infringement and threatening to "escalate this matter to your upstream provider [hence] putting at risk all of your 'clients.'" Federal Complaint ¶ 15; Exhibit to Dozier Motion to Dismiss Federal Complaint. pSek complied with Dozier's demand. Federal Complaint ¶ 16.[3]

Next, Riley found yet another ISP, Hostgator; on September 27, 2008, Dozier contacted Hostgator with yet another warning that he had brought a "trademark infringement" claim against Riley. This demand bore fruit immediately as Hostgator shut down Riley's web site without any notice to Riley. *Id.* ¶ 17. Only when Riley found yet another web host, Ctyme, and filed suit in this Court against Dozier seeking damages and declaratory and injunctive relief, did Dozier stop invoking trademark law to try to get Riley's web site taken down.

Although the complaint has never been served on Riley or any of the other defendants, pSek furnished to Riley a copy of the Dozier's demand letter and the complaint which was

---

[2]Dozier's awareness of this exception is shown by one of his blog posts about CDA immunity: "There is a specific carve-out for intellectual property claims. The DMCA establishes a process by which a website, or web business, with third party content could be liable. Yes, they can be liable under many circumstances for 'contributory copyright infringement.'" http://johndozierjr. typepad.com/dozierinternetlaw/2008/10/dozier-internet-law-section-230-immunity.html.

[3]On a blog that purports to set forth his personal opinions, Dozier gloats about the reasons why Riley's ISPs have likely taken down his site, saying, among other reasons, "Perhaps the hosts simply don't want to risk being tied up in litigation and risk potential 'aiding and abetting', 'conspiracy', and 'contributory trademark infringement' claims." http://johndozierjr.typepad.com/ dozierinternetlaw/2008/09/dozier-internet-law-v-ronald-j-riley-et-al.html.

attached to it. On October 2, 2008, Riley removed this case from Virginia state court to this Court, alleging both federal question and diversity jurisdiction. Riley has also filed a complaint for declaratory and injunctive relief and damages, seeking to prevent Dozier from invoking phony trademark and defamation claims to get his web site taken down, as well as seeking damages for any loss of visibility for his web site that Dozier might achieve though his baseless claims. No. 3:08-cv-00643-HEH, DN 1. No relief is sought in that complaint to prevent Dozier from making whatever public statements he wishes about Riley, whether critical of Riley himself or rebutting Riley's assertions about Dozier.

Dozier has now moved to remand this case to state court, and by separate motion seeks to have Riley's federal court complaint dismissed. This memorandum responds to the motion for remand. By separate memorandum, Riley will oppose the motion to dismiss his complaint. Undersigned counsel are also preparing motions for summary judgment in both cases that will be filed shortly.

## INTRODUCTION AND SUMMARY OF ARGUMENT

A state court complaint may be removed to federal court when it could have been brought in federal court originally, such as because the complaint states a claim for relief under federal law or because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. Because an order of remand is unappealable, district courts "scrutinize every attempt to deprive a defendant of his right to a federal forum, and will only remand if it is clear that jurisdiction is improper at the federal level." *Ford-Fisher v. Stone*, 2007 WL 190153, at *2 (E.D.Va. Jan 22, 2000). Although the plaintiff is the master of its complaint, and is free to deliberately waive federal claims in favor of pursuing only claims that cannot be brought in

federal court, *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003), a complaint that pleads a federal claim is nevertheless within the district court's jurisdiction even if the plaintiff asserts that he intended to plead only a state law claim. Remand is appropriate only if "[a] fair reading of the complaint in this case provides no basis for federal question jurisdiction." *Wyatt v. Sussex Surry*, 482 F. Supp.2d 740, 745 (E.D. Va. 2007)

In this case, there are three separate bases for finding federal jurisdiction. First, the allegations in the complaint plainly state claims under the Lanham Act for infringement of a trademark not registered with the United States Trademark Office under 15 U.S.C. § 1125(a), and hence there is federal jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1338, as well as 15 U.S.C. § 1121. Second, although the amounts of financial relief pleaded in the complaint may reflect a deliberate effort to plead under the federal amount in controversy of $75,000, it is clear that the attorney's fees alone in this case will far exceed $75,000, and a lowball pleading will not defeat federal jurisdiction where the evidence suggests that larger amounts are at issue. Third, the value of the injunction must also be included in the amount in controversy, and, in light of plaintiff's allegation of the amount of compensatory damages, it follows that the legal value to plaintiff of the injunction for which it prays brings the amount in controversy above $75,000.

I. **THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THIS CASE ARISES UNDER FEDERAL LAW.**

The first reason to deny the motion for remand is that the complaint states claims under federal law, because the complaint states a claim under 15 U.S.C. § 1125(a). Consequently, the Court has jurisdiction under 15 U.S.C. § 1121 (trademark infringement), 28 U.S.C. § 1331 (general federal question jurisdiction), 28 U.S.C. § 1337 (jurisdiction over claims "under any Act

of Congress regulating Commerce"), and 28 U.S.C. § 1338 (civil action "under any Act of Congress relating to . . . trademarks"). Dozier argues that the Lanham Act does not apply here because its complaint does not allege its ownership of a federally registered trademark. Although section 32 of the Lanham Act, 15 U.S.C. § 1132, provides a cause of action for infringement of marks that have been registered with the United States Patent and Trademark Office, "[s]ection 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered." *U.S. Search, LLC v. U.S. Search.com*, 300 F.3d 517, 522 (4th Cir. 2002), citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992).

Although the complaint does not expressly cite the Lanham Act, it also does not cite Virginia's trademark infringement statutes (or any Virginia common law) as a source of law supporting the cause of action. The "reasonable reading" of the complaint is that it states a Lanham Act claim; hence removal was proper. Indeed, plaintiffs in section 43(a) cases commonly cite their state registrations as evidence that their trademark, albeit not federally registered, has sufficient secondary meaning to warrant trademark protection under section 43(a). *National Ass'n for Healthcare Communications v. Central Arkansas Area Agency on Aging*, 257 F.3d 732, 737 (8th Cir. 2001). Morever, the protection under section 43(a) for a mark that lacks federal registration is frequently identified in shorthand as "common law trademark rights," either because the trademark itself is a "common-law trademark," or because section 43(a) federalized the common law of unregistered trademarks. *Id.*; *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 530 (7th Cir. 2003); *Planetary Motion v. Techsplosion*, 261 F.3d 1188, 1198 (11th Cir. 2001); *Marshak v. Treadwell*, 240 F.3d 184, 198 (3d Cir. 2001); *Sugar Busters LLC v. Brennan*,

177 F.3d 258, 269 (5th Cir. 1999).

Although removal is governed by the face of the complaint rather than the plaintiff's intentions, John Dozier's treatment of the complaint provides a strong reason to believe that he considered the complaint as stating a federal claim, or at least ought to be estopped from claiming otherwise. Shortly after he filed the complaint, he wrote a letter on Dozier Internet Law letterhead, attaching his complaint in this action, and demanding that a California company that hosted Riley's web site take down the site or face a lawsuit for contributory trademark infringement as well as for aiding and abetting and conspiracy. Given Dozier's sophistication as a cyber lawyer and trademark lawyer, he had to have understood that, although the federal Communications Decency Act, which immunizes web hosts against liability for content provided by others, has an exception for intellectual property claims, the United States Court of Appeals for the Ninth Circuit has held that the intellectual property exception includes only **federal** intellectual property claims. *Perfect 10 v. CC Bill*, 488 F.3d 1102 (9th Cir. 2007). Unless Dozier was deliberately threatening a non-lawyer with litigation that he knew would have faced Rule 11 sanctions if filed in California (which is within the Ninth Circuit), he must have meant to imply that the complaint alleged a claim for trademark infringement under federal law. At the very least, he should be estopped from denying that his complaint alleges a federal trademark claim. For this reason, as well as because the complaint on its face alleges trademark infringement that is actionable under section 45 of the Lanham Act, the motion to remand should be denied because the case presents a federal question.[4]

---

[4] Assuming that the federal law claims were properly removed as federal questions, the state claims were properly removed with them pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

## II. THE COMPLAINT WAS PROPERLY REMOVED UNDER DIVERSITY JURISDICTION.

The complaint was also properly removed under 28 U.S.C. § 1332. Dozier does not dispute that the parties are diverse, but contends that the amounts of monetary relief set forth in the complaint total less than $75,000, and that the injunction for which the complaint prays has no value because it seeks to enjoin only illegal conduct. Neither argument is sound.

First, although courts pay some respect to the amounts set forth in a complaint, the courts will not tolerate the pleading of lowball numbers where it is apparent that much larger amounts are at stake. "In determining the amount in controversy, the Court is not bound by the amount the Plaintiff pleads in the state action. Rather, the Court must look at the totality of the circumstances." *Schwenk v. Cobra Mfg. Co.*, 322 F. Supp.2d 676, 678 (E.D. Va. 2004). The Court should consider not only the amounts pleaded in the complaint – assuming that they are pleaded in good faith – but also

> whether it is apparent "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The party seeking removal to federal court must show at law that the amount being sought by the plaintiff **could produce** a sufficient award to exceed $75,000. *Schlessinger v. Salimes*, 100 F.3d 519, 521 (7th Cir. 1996).
>
> *Cradle v. Monumental Life Ins. Co.*, 354 F. Supp.2d 632, 633-634 (E.D. Va. 2005) (emphasis added).

Here, the plaintiff pleaded that it has suffered $35,000 in compensatory damages, and further seeks an award of $10,000 in punitive damages as well as $10,000 in attorney's fees. The cases consistently hold that punitive damages are considered toward the jurisdictional amount, *Gavin v. AT&T Corp*, 464 F.3d 634, 641 (7th Cir. 2006), and that when attorney's fees are sought

in the complaint, pursuant to a statute that allows them to be awarded, even if the award is discretionary, fees are counted toward the jurisdictional amount. *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 873-74 (5th Cir. 2002); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). *See also Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (included when common law makes award discretionary). Both the Lanham Act, 15 U.S.C. § 1117(d), and Virginia's trademark infringement statute, § 59.1-92.13, make express provision for awards of attorney's fees in favor of the prevailing party, at the discretion of the Court. (In the Lanham Act, exceptional circumstances are required.).

The amount of attorney's fees pleaded in the complaint is much lower than is likely to be awarded in a case of this character. The most recent survey by the American Intellectual Property Lawyers Association reveals that the average cost of taking a trademark infringement case with less than $1 million at risk just to the end of discovery was $150,000; to take a case to trial, the average cost was $255,000. Exhibit C (AIPLA Report of the Economic Survey 2007, at 25). For example, in a trademark infringement case recently completed by undersigned counsel, *Smith v. Wal-Mart Stores*, 537 F. Supp.2d 1302 (N.D. Ga. 2008), the total fees incurred to obtain summary judgment of non-infringement was more than $220,000. Exhibit D (Motion for Award of Fees). If even $30,000.01 in attorney fees are likely to be incurred by plaintiff in this case, that would be enough to raise the amount of monetary relief over the $75,000 minimum.

Moreover, the complaint prays for an injunction, and the value of that injunction must be calculated to determine the amount in controversy. The amount in controversy with respect to a claim for equitable relief is judged from the perspective of whichever party would benefit more by prevailing — that is, if either the plaintiff would benefit in an amount exceeding the

jurisdictional amount, or the impact and cost of the injunction to the defendant exceeds the jurisdictional amount, that is a sufficient basis for diversity jurisdiction. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006); *America's MoneyLine v. Coleman*, 360 F.3d 782, 787 (7th Cir. 2004); *Dixon v. Edwards*, 290 F.3d 699, 710-711 (4th Cir. 2002). *See also Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (amount in controversy is set by "the value of the object of the litigation"); Comment, *The $75,000.01 Question: What Is the Value of Injunctive Relief,* 6 Geo. Mason L. Rev. 1013 (1999) (arguing for the "either viewpoint" rule; recognizing that some courts consider only the plaintiff's perspective, and noting other minority views in some courts).

In this case, taking the allegations of the complaint as true, the amount in controversy is satisfied. Plaintiff alleges that, based on the existence of Riley's web site for less than eleven months — from mid-October 2007 to September 5, 2008 — it suffered $35,000 in damages. The injunction that it seeks, to prevent the accrual of any further damages, must necessarily be worth at least that much. Adding the value of the injunction to plaintiff even to the specific monetary amounts pleaded in the complaint — $35,000 in damages, $10,000 in punitive damages, and $10,000 in attorney fees — brings the case over the jurisdictional amount of $75,000.

## CONCLUSION

The motion to remand should be denied.

Respectfully submitted,

                                                /s/
                                    Thomas M. Wolf, Esq.
Virginia State Bar Number 18234
Attorney for Defendants
LeClair Ryan
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone:    804-916-7143
Facsimile:     804-916-7243
Thomas.Wolf@leclairryan.com

Paul Alan Levy, Esq.
DC Bar Number 946400
Gregory Beck, Esq.
DC Bar Number 494479
Attorney for Defendants
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009-1001
Telephone:    202-588-7725
Facsimile:     202-588-7795
plevy@citizen.org

November 12, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of November, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following::

        Donald E. Morris, Esq.
        Dozier Internet Law, P.C.
        11520 Nuckols Road, Suite 101
        Glen Allen, Virginia 23059
        Telephone: 804-346-9770
        Facsimile:  804-346-0800
        Email: don@cybertriallawyer.com

                /s/
        Thomas M. Wolf, Esq.
        Virginia State Bar Number 18234
        Attorney for Defendants
        LeClair Ryan
        951 East Byrd Street, 8th Floor
        Richmond, Virginia 23219
        Telephone:     804-916-7143
        Facsimile:       804-916-7243
        Thomas.Wolf@leclairryan.com

        Paul Alan Levy, Esq.
        DC Bar Number 946400
        Gregory Beck, Esq.
        DC Bar Number 494479
        Attorney for Defendants
        Public Citizen Litigation Group
        1600 20th Street, N.W.
        Washington, DC 20009-1001
        Telephone:     202-588-7725
        Facsimile:       202-588-7795
        plevy@citizen.org
        gbeck@citizen.org