IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**RICHMOND DIVISION**

| | |
|---|---|
| DOZIER INTERNET LAW, P.C., a Virginia corporation, ) ) ) Plaintiff, ) ) v. ) ) RONALD J. RILEY, et al., ) ) ) Defendants. ) | CIVIL NO. 3:08cv0643 (HEH) **DOZIER INTERNET LAW, P.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES** |

COMES NOW **DOZIER INTERNET LAW, P.C.** (hereinafter referred to as **"DIL"**), a professional corporation organized and existing under the laws of the Commonwealth of Virginia, by counsel, pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1447(c), and sets forth this Memorandum in Support of its Motion for Attorneys' Fees.

**Introduction**

This matter was brought before this Honorable Court via Defendants' Notice of Removal filed on October 2, 2008. Plaintiff filed a Motion to Remand the Case on October 29, 2008, which was granted by this Court on November 20, 2008. Plaintiff requests an award of attorneys' fees incurred as a result of Defendants' removal.[1]

**Argument**

This Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). "Bad faith is not necessary to support an award of fees and costs under § 1447(c)." *In re Lowe*, 102 F.3d

---

[1] Dozier Internet Law is not requesting an award of attorneys' fees for the declaratory judgment action even though attorneys' fees are arguably available under exceptional circumstances under the Lanham Act. In addition, Dozier Internet Law has not brought forward any motion for Rule 11 Sanctions.

1

731, 733 (4th Cir. 1996). "Parties are presumptively entitled to recover attorneys' fees under § 1447(c)." *See Lee Const. Co. of the Carolinas, Inc. v. Sloan Const. Co.*, 104 Fed. Appx. 323, 324 (4th Cir. 2004) (internal citations and quotations omitted). This presumption, of course, is not irrebuttable, and the award is within the Court's discretion. *Id*.

In this case, DIL requests that this Court award DIL its attorneys' fees in the sum of $14,270.00, which fees were reasonable and necessary, and represent far less than half of the fees incurred in opposing the removal and responding to the declaratory judgment action filed by the Defendants. Additionally, it is less than the $25,000.00 that Public Citizen claimed it had incurred early on in the briefing schedule.

As this Court succinctly points out, DIL's "Complaint" makes no mention of the Lanham Act, and the Court found no federal question apparent from the face of the Complaint. (Memorandum Order Granting Plaintiff's Motion to Remand "Order" at 3.) As such, it was clear that there was no federal question jurisdiction involved.

Regarding diversity jurisdiction, this Court also found that the Defendants have produced **no** evidence establishing that the value of the injunction and the attorney fees requested in state court increases the amount in controversy to satisfy the statutory threshold amount of $75,000. (Order at 3 (emphasis added)). Indeed, as the Court pointed out, given that the Defendant had already acceded to the demands of the Plaintiff and changed the website so that the links sued upon were no longer directing to the same commercial page, the request for injunctive relief included in the original state court filing could have no value.[2] It should also have been apparent to the Defendants and their

---

[2] Since the filing of the state court action, a new web page was launched by Defendants in which the links originally sued upon were removed and extensive additional "fair use" content was added to the page. The

legal counsel that the arguments they put forth would have substantially expanded federal jurisdiction and fundamentally restricted the ability of state courts to adjudicate state trademark claims in which a defendant is out of state, no matter the amount in dispute.[3]

While bad faith is not necessary to support an award of fees under § 1447(c), the Court may consider such misconduct within its reasonable discretion. This case was removed to federal court so that the Defendants and their legal counsel could file a high profile lawsuit against the Plaintiff and John W. Dozier, Jr., individually in federal court. This Court previously dismissed the Complaint for Declaratory Judgment on at least two separate grounds. However, it is appropriate to view the removal of the state court action in the context of the overall conduct of the Defendants and their legal counsel since the declaratory judgment would not have been filed absent the removal. It is further important to understand the context under which this misconduct and bad faith litigation has occurred.

Public Citizen Litigation Group is more than a law firm. It is a group of attorneys, working for the Ralph Nader founded Public Citizen, focused on using the legal system to support an extensive public relations campaign to perpetuate and protect certain types of online conduct under claims of "free speech" and "fair use". Public Citizen Litigation Group not only has electronic access to over 100,000 members of Public Citizen, but also has established a supportive ring of prolific bloggers.[4] Public

---

role of the Defendants, LeClair Ryan, LLC, and Public Citizen Litigation Group in these changes is unclear. It is clear, however, that not only did the Defendants and their counsel not disclose this fact, but Defendants relied upon the website changes to attempt to justify the removal of the state court action.

[3] Paul Levy's resume on the Public Citizen website explains that "[o]ver the years, he also developed subspecialties in some arcane issues of federal procedure such as removal jurisdiction. . ." It is therefore difficult to imagine attributing these arguments to simple unintentional oversight.

[4] The "new" website launched recently not only includes commercial advertising for Public Citizen's lawyers but also for an Internet law firm that is a close ally of Public Citizen and a member of this "ring of bloggers".

3

Citizen uses these many electronic distribution points to very effectively deliver on the Internet its beliefs and philosophies in an attempt to shape the opinions of web citizens. It is within this framework that the removal was undertaken and the related declaratory judgment action filed.

Public Citizen Litigation Group, and in particular Paul Levy, has provided "protection" to Ronald Riley for many years. The state court removal and declaratory judgment action were simply a continuation of Paul Levy's efforts of exerting "muscle" against Riley's opponents and in support of Riley's conduct.

This litigation has been brought in bad faith. Indeed, by Public Citizen Litigation Group's own pronouncements in the form of a press release and blog postings, it is apparent that the reasons this case was removed and the declaratory judgment action filed were as follows:

1. *Dozier Internet Law had to be stopped from contacting Riley's web hosts and blowing the whistle.* The lawsuit itself asked for an order prohibiting further communication with web hosts relating to trademark infringement. Paul Levy sets forth an even more expansive goal in his October 2, 2008, blog entry, in which he states that it "it remains to be seen whether, at this point, Dozier will . . . continue to try to bully Riley's new ISP with a threat to hold it liable".

2. *Web hosts need to be taught that they must defer to purported "First Amendment" rights of their customers and abandon their self-regulation and self-policing of illegality for a greater cause.* Paul Levy published in a blog entry on October 3, 2008, that "consumers who use the ISPs that surrendered to Dozier's bullying . . . should consider taking their business elsewhere."

3. *There needs to be a legislative initiative in Congress to allow web hosts to host trademark infringing sites with immunity.* In the same October 3, 2008, blog entry Paul Levy states that "amendment of the CDA seems the route to explore".

The Public Citizen Litigation Group relies upon contributions and also attempts to undertake litigation that will result in the award of attorneys' fees for its own benefit.[5] Public Citizen creates controversy and undertakes the propagation of that controversy for purposes of generating financial support.[6] While each of the three specific reasons why Public Citizen Litigation Group undertook this litigation is revealing, the primary motivation by Public Citizen Litigation Group is financial in nature. Riley has been a referral source for Public Citizen for years on a number of cases. Riley also, by his own conduct, creates a steady stream of "high profile" work that garners Public Citizen Litigation Group publicity and contributions. Public Citizen also has a legislative and lobbying arm for which contributions would be solicited if the "legislative initiative" relating to trademark infringement immunity is undertaken. The intimidation of web hosts to shirk their contractually permissible self-policing and self-regulatory responsibilities and allow controversial and illegal sites to be maintained on the Internet will merely serve to increase litigation surrounding fair use, free speech, and the First Amendment. Public Citizen, through this litigation and through communications related to this litigation, are attempting to create a more vociferous dialogue, perpetuate conflict,

---

[5] It is noted that Public Citizen claimed in its Memorandum in Opposition to the Dozier Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction that its attorneys' fees in this litigation were already "$25,000.00".
[6] To understand the economic motivation involved in Public Citizen initiatives, when contributions fell during Ralph Nader's first presidential bid, he was removed from leadership of the organization he personally founded.

5

and render pertinent its own views, primarily for the purpose of generating high profile publicity and the attendant increase in monetary contributions.

While this Court has the ability to award attorneys' fees without a finding of bad faith, a finding of bad faith and misconduct by the Defendants and their legal counsel would seem to be appropriate.

## Conclusion

For the reasons set forth above, this Court should grant DIL'S Motion for Attorneys' Fees pursuant to 28 U.S.C. § 1447(c), enter an order awarding $14,270.00 for such fees and costs, and grant such other and further relief that this Court deems just and proper.

Dated: December 4, 2008

Respectfully submitted:

**DOZIER INTERNET LAW, P.C.**

By: /s/ Donald E. Morris
John W. Dozier, Jr., Esq. (VSB # 20559)
Email: jwd@cybertriallawyer.com
Donald E. Morris, Esq. (VSB # 72410)
Email: don@cybertriallawyer.com
DOZIER INTERNET LAW, P.C.
11520 Nuckols Road
Suite 101
Glen Allen, VA 23059
Phone (804) 346-9770
Fax (804) 346-0800

*Counsel for Dozier Internet Law, P.C.*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>   Thomas Wolf, Esq.
>   LeClair Ryan
>   Riverfront Plaza, East Tower
>   951 East Byrd Street, Eighth Floor
>   Richmond, Virginia 23219
>   Telephone (804) 916-7143
>   Email: Thomas.Wolf@leclairryan.com
>
>   Paul Alan Levy, Esq.
>   PUBLIC CITIZEN LITIGATION GROUP
>   1600 – 20th Street, N.W.
>   Washington, D.C. 20009
>   (202) 588-1000
>   Email: plevy@citizen.org
>
>   *Counsel for Defendants*

>   /s/ Donald E. Morris
>   Donald E. Morris, Esq. (VSB # 72410)
>   Email: don@cybertriallawyer.com
>   DOZIER INTERNET LAW, P.C.
>   11520 Nuckols Road
>   Suite 101
>   Glen Allen, VA 23059
>   Phone (804) 346-9770
>   Fax (804) 346-0800
>
>   *Counsel for Dozier Internet Law, P.C.*